# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

HORIZON TOWER LIMITED, LLC and
HORIZON TOWER, LLC,

      Plaintiffs - Appellees,

  v.

PARK COUNTY, WYOMING; BOARD OF
COUNTY COMMISSIONERS OF PARK
COUNTY, WYOMING; DOSSIE
OVERFIELD, LLOYD THIEL, LEE
LIVINGSTON, SCOTT MANGOLD, and
SCOTT STEWARD, in their official capacity
as Members of the Board of County
Commissioners for Park County, Wyoming;

      Defendants – Appellants.

Case No. 24-8069
(D.C. No. 2:23-CV-00037-ABJ)
(D. Wyo.)

---

## APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION
## FOR STAY PENDING APPEAL

---

Thomas Scott Thompson
Jonathan P. Garvin
Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
555 12th Street NW, Suite 100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com

ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC.

October 15, 2024

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY ...............................................................1

II. RESPONSE TO BACKGROUND ....................................................4

III. CURRENT STATUS AND TIMELINE FOR CONSTRUCTION .................8

IV. LEGAL STANDARD....................................................................8

V. ARGUMENT ...............................................................................9

   A. The County Cannot Establish Imminent, Actual Irreparable Harm..............9

   B. Horizon Will Be Irreparably Harmed by Grant Of The Stay.......................12

   C. The County is Not Likely to Succeed on the Merits. ...................................13

      1. The District Court's Evaluation Of *Loper Bright*, the Hobbs Act, and the *FCC 2018 Order* Was Not Dispositive. ..............................................13

      2. The County Is Not Likely To Succeed On The Effective Prohibition Claim. ......................................................................................17

      3. The County Is Not Likely To Succeed On The Substantial Evidence Claim. ......................................................................................19

   D. The Public Interest Favors Denying the County's Request. ........................21

VI. CONCLUSION................................................................................22

Statutory Appendix

Exhibit A – PARK COUNTY, WY 2015 DEVELOPMENT STANDARDS AND REGULATIONS, Ch IV, § 4(d)(3)(A) (excerpted)

Exhibit B – Declaration of Michael Mathisen In Response to Motion For Stay Pending Appeal

Exhibit C – *Sprint Corp. v. FCC*, No. 18-9563, Order (10th Cir. Jan 10, 2019)

Exhibit D – Excerpts of Deposition of Joy Hill, Park County Rule 30(b)(6) designee

Exhibit E – Excerpts of Deposition of Steven Kennedy

Exhibit F – Excerpts of Transcript of Park County February Hearing

Pursuant to the Court's October 11, 2024, Order (Dkt. 5) and F.R.A.P. 27(a)(3), Appellees Horizon Tower Limited, LLC and Horizon Tower, LLC ("Horizon") hereby Oppose Appellants' Park County, Wyoming; Board of County Commissioners of Park County, Wyoming; Dossie Overfield, Lloyd Thiel, Lee Livingston, Scott Steward and Scott Mangold (collectively the "County"), Emergency Motion for Temporary Stay Pending Appeal ("Motion" or "Dkt. 4-1").

## I.     INTRODUCTION AND SUMMARY

This case involves Horizon's attempt to build a wireless tower to remedy a significant gap in personal wireless service that covers approximately 72 square miles, including a growing residential area and heavily traveled highway. Despite the measures taken by Horizon to propose the least intrusive means of remedying the gap, the proposed tower has faced generalized opposition to any new technology. With Section 332(c)(7)(B) of the federal Communications Act, Congress specifically limited the authority of local governments over wireless facility deployments to prevent this type of not-in-my-backyard opposition.

The County's current Motion is an attempt to further delay Horizon's deployment after the District Court correctly held against the County on every point and on every claim. The Motion fails to satisfy the standards for a stay and should be denied.

There is no imminent threat of irreparable harm.  The County introduces no evidence demonstrating that it will suffer *any* actual harm from issuing the special use permit ("SUP"), much less irreparable harm.  Any impact of the tower when finally constructed is purely speculative, at best.  Moreover, even if construction of the tower could be considered actual and irreparable harm, it is not "imminent."  Because granting the SUP is only the first step, construction of the tower will take approximately 9 months.  Resolution of the County's appeal may occur before the tower is even complete.  Finally, even if the County succeeds, the tower could be removed.

In contrast, granting the County's request will irreparably harm Horizon.  The only remedy available to Horizon for the County's unlawful denial of Horizon's SUP is expedited treatment of Horizon's claims; Horizon cannot recover monetary damages for lost revenues or any other harms.  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005); 47 U.S.C. § 332(c)(7)(B)(v).  Horizon cannot recover lost time.

The County is also not likely to succeed on appeal.  The County's rehashing of its arguments related to the applicability of *Loper Bright*, the Hobbs Act, and the Federal Communications Commission's ("FCC") 2018 Declaratory Ruling are substantively incorrect.  But critically, the Court need not reach them because the District Court ultimately held that the County's denial violated the "effective

prohibition" clause of 47 U.S.C. § 332(c)(7)(B)(i)(II) under the Tenth Circuit's pre-2018 standards. The County also is not likely to succeed under the Tenth Circuit's standard, as applied by the District Court. The County identifies no flaws in the District Court's analysis. Instead, ignoring all the other evidence, the County focuses on a single phrase from Horizon's expert's deposition, asserting it shows that the tower's coverage objective was to extend coverage "as far east and west [as] coverage is possible." The argument grossly mischaracterizes the witness's testimony, ignores all other evidence, and cites no case law supporting the argument. The District Court correctly rejected the theory, recognizing that Horizon's 195-foot proposed tower is actually much lower than the 250-foot tower Horizon's radio frequency expert believed was ultimately necessary to fully meet the coverage objective—further supporting the conclusion that the proposed tower is the least intrusive means of remedying the gap. Finally, the County is unlikely to succeed on the merits of the "substantial evidence" claim. The County demonstrates no error in the Court's analysis, and the County's assertion that "65% of the land ownership in the area" opposed the tower mischaracterizes the record evidence, misstates the County's regulations, ignores the District Court's holding, and is unsupported by case law. Accordingly, the Motion should be denied.

## II. RESPONSE TO BACKGROUND[1]

This case involves Horizon's attempt to deploy a wireless tower to allow Verizon Wireless and other personal wireless service providers to remedy a gap in wireless coverage that includes the growing residential area of Wapiti Valley and extends for many miles east and west along the heavily traveled Highway 20. Horizon undertook a thorough investigation of potentially available properties and locations. Although its radio frequency engineering expert believed a 250-foot tall tower was preferable, Horizon applied to install a 195-foot tower at a location set back approximately 1,275 feet from the highway and surrounded by: vacant lots; a Mountain States Telephone installation with a 20-foot tower, satellite dish, and utility building; two Wyoming Department of Transportation parcels; and between it and the highway, the Red Barn gas station. (*See* Pls.' Statement of Material Fact ¶¶ 9-12, 30-31, 33-35 ("Dkt. 4-5").)[2]

Under the County's zoning regulations, the proposed tower was allowed in the location via a special use permit ("SUP"), which Horizon applied for on October 17, 2022. (Dkt. 4-5 ¶ 12.) During the three hearings held by the County, Horizon presented voluminous evidence showing how the proposed tower

---

[1] Horizon sets forth the following summary background to correct misrepresentations in the County's "Background" section.

[2] Where possible, Horizon cites herein to documents submitted by the County by reference to the Appellate docket document number ("Dkt. ___").

would be harmonious with surrounding properties and would not cause significant damage to the use of the surrounding properties. (*See, e.g.,* Dkt. 4-5 ¶¶ 49-50, 59, 62-69, 75-76; Excerpt Admin. Rcd. at 17-44 ("Dkt. 4-6").)[3] The opposition from residents was overwhelmingly generalized opposition to any wireless facility in the area, with many arguing against any change or new technology. (*See, e.g.,* Dkt. 4-5 ¶¶ 71-73; Dkt. 4-6 at 186-202.)

Ignoring Horizon's evidence, the County denied Horizon's application on February 7, 2023. (Dkt. 4-6 at 239.)

To prevent the type of not-in-my-backyard opposition to wireless facilities present in this case, Congress enacted substantive and procedural limits on the authority of local governments to deny personal wireless facilities. 47 U.S.C. § 332(c)(7)(B); *T-Mobile S., LLC v. City of Roswell,* 574 U.S. 293, 300 (2015); *City of Arlington v. FCC,* 569 U.S. 290, 293-94 (2013); *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.,* 546 F.3d 1299, 1306 (10th Cir. 2008). Horizon filed this action on the grounds that the County's denial both has the effect of prohibiting the provision of personal wireless service and was not supported by substantial evidence, in violation of Sections 332(c)(7)(B)(i)(II) and (iii).

---

[3] Horizon notes that the County's "Exhibit E" (Dkt. 4-6) is *a portion* of the administrative record, not the complete administrative record. Page number citations for Dkt. 4-6 herein refer to the Appellate ECF page stamp number.

Contrary to the County's characterizations, the District Court correctly held that the County's denial violates those limitations under the well-established standards adopted by the Tenth Circuit (Dist. Ct. Order ("Order" or "Dkt. 4-8").

Regarding the "effective prohibition" claim, the District Court recognized that historically courts in the Tenth Circuit have held that an effective prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), exists if (a) the wireless carrier has a significant gap in service and (b) the proposed facility is the least intrusive means of addressing the gap. (Order at 12 (citing *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 888 (10th Cir. 2016)). The District Court also recognized that in 2018, the FCC issued a Declaratory Ruling and Order clarifying the standard applicable to effective prohibition of service claims. (Order at 13 (citing *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 37 (2018) ("*FCC 2018 Order*")). Accordingly, the District Court analyzed the impact, if any, of the *FCC 2018 Order*, concluding that the Hobbs Act, 28 U.S.C. § 2342(1), deprives a district court of jurisdiction to reject or find erroneous an FCC order. (Order at 13-14, 16-19).

Notwithstanding its conclusion regarding the Hobbs Act, the District Court ultimately evaluated Horizon's claim under the Tenth Circuit's caselaw and standards. (Order at 19-24.) Contrary to the County's assertion, the District Court *did not* hold that service providers "no longer need to show that their proposed

6

structure is the least intrusive means of curing a wireless coverage gap." (Motion at 6.) Instead, the District Court concluded that without further guidance from the Tenth Circuit it could not say whether the FCC's standard controlled in this case, but that Horizon had met both the "least intrusive means" standard under the Tenth Circuit's standard and the FCC's clarified standard. (Order at 19, 22-24.)

The District Court also held that the County's denial was not supported by "substantial evidence" in violation of 47 U.S.C. § 332(c)(7)(B)(iii). Among other things, the District Court found, contrary to the County's current assertion,[4] that the County's denial did *not* find that the proposed tower "*will not* create a substantial adverse impact on *adjacent properties*," as required by the County's regulations, (PARK COUNTY, WY 2015 DEVELOPMENT STANDARDS AND REGULATIONS, Ch IV, § 4(d)(3)(A) (attached hereto as Exhibit A); rather, the District Court recognized that the County's denial actually applied a lesser standard, finding only "a *high likelihood*" that the proposed tower would have a significant adverse impact on "the *neighborhood*." (Order at 29-30; Dkt. 4-6 at 239 ¶ 61 (emphasis added).) The District Court recognized that the distinction is important because the County's finding does not comport with the County's zoning regulation, which requires more certainty than "a likelihood" of adverse impact and looks to a narrower area—

_____

[4] The County inaccurately states that its denial found that the proposed tower "would create a substantial adverse impact on adjacent properties." (Motion at 3.)

7

"adjacent properties"—than the "neighborhood." (Order at 29-30.) The District Court also held that the County's denial failed to explain why it ignored the substantial evidence supporting the proposed tower, including evidence demonstrating that the proposed tower would be in harmony with the surrounding area. (Order at 27-29.)

Recognizing that Horizon's only remedy is expedited action, the District Court ordered the County to issue the denied SUP within 7 days, by October 11, 2024. (Order at 31-32.)

## III.     CURRENT STATUS AND TIMELINE FOR CONSTRUCTION

Pursuant to this Court's October 11, 2024, Order (Dkt. 5), Horizon reports that as of the date of this Response, the County has not issued the special use permit, as ordered by the District Court.

In addition, as explained below and in the accompanying declaration of Mr. Mathisen, even if the County were to immediately issue the special use permit, due to the numerous additional engineering and permitting steps required after issuance of the SUP, construction of the proposed tower would not be complete until approximately July 2025.

## IV.     LEGAL STANDARD

Although the County correctly cites Fed. R. App. P. 8 and Local Rule 8.1, it fails to recognize the significant showing required of the movant. A movant's request

for a stay is evaluated under a four-factor framework. *See Nken v. Holder,* 556 U.S. 418, 434, (2009); *see also* 10th Cir. R. 8.1. Those factors include: "(1) whether the stay applicant has made a ***strong showing*** that he is likely to succeed on the merits; (2) whether the applicant ***will be*** irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (emphasis added); *Sec. Inv. Prot. Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960, 968 (10th Cir. 1992).

## V.    ARGUMENT

### A.    The County Cannot Establish Imminent, Actual Irreparable Harm.

To demonstrate irreparable harm, a movant's alleged injury "must be both certain and great" and not "merely serious or substantial." *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017). "Purely speculative harm will not suffice." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). The County must show that "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *Nken*, 556 U.S. at 434 ("simply showing some possibility of irreparable injury fails to satisfy the [irreparable injury] factor"). As the County recognizes, "[t]o constitute irreparable harm and injury must be imminent, certain, actual and *not*

*speculative.*" (Motion at 12 (quoting *Colorado v. U.S. Envtl. Prot. Agency,* 989 F.3d 874, 886 (10th Cir. 2021) (emphasis added).)  The County does not satisfy this standard.

The County will not suffer certain, actual harm by issuing the SUP.  At most, the County alleges there is a risk that Horizon will construct the tower, and the County argues that the tower would "mar" the most traveled route in the County.  (Motion at 12.)  Yet, the County's assertion the tower would "mar" the view is purely speculative, based on the subjective views of unidentified people.  The County's speculative argument about potential future subjective harm is too remote. *See, e.g., Up State Tower Co., LLC v. Town of Kiantone*, 2020 WL 1909981 at *3 (W.D.N.Y. Apr. 20, 2020) (denying motion to stay pending appeal based on alleged impact of tower on adjacent properties).

Moreover, construction of the tower will take approximately 9 months, meaning it may not occur before resolution of the County's appeal (and Horizon would agree to an expedited schedule for this appeal).  Thus, the injury alleged by the County's request is remote and speculative, not "certain [or] actual." *Colorado*, 989 F.3d at 886.  The County's reliance on *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1086 (10th Cir. 2004), is inapposite because the "environmental harm" addressed in that case concerned damage to land and structures along the expansion of the highway, not potential aesthetic impacts.

The County's assertion that it will be irreparably harmed by "being deprived of [its] power and duty to enforce County zoning regulations and procedures" erroneously presupposes that the proposed tower does not comply with the zoning regulations and that the County's denial was lawful. (Motion at 13.) Instead, as the District Court held, the County's denial of Horizon's SUP violates federal law and conflicts with the County's regulations. The County is not irreparably harmed by being enjoined from denying Horizon's application in violation of federal law. *See Up State Tower*, 2020 WL 1909981 at *3. The County's reference to *New Mexico*, (Motion at 13), is unavailing given the court rejected the state's "conclusory" allegations of irreparable harm and denied the stay. 854 F.3d at 1255-56.

Critically, even assuming the County could demonstrate actual harm, it would not be *imminent*. Because of the multiple steps that must be accomplished after issuance of the SUP, the tower would not be fully constructed for approximately ***nine months***. (Decl. of Michael Mathisen In Resp. to Mot. For Stay Pending Appeal ¶¶ 4-5 (attached hereto as Exhibit B).) After the County grants the SUP, Horizon would still need to undertake multiple steps, such as soil testing, foundation designs, preparation of construction drawings and tower design drawings, obtaining a building permit from the County, fabrication of the tower structure by the manufacturer, and final construction. *Id.* Those steps cannot be started until after issuance of the SUP because they depend on the terms of the final SUP. *Id.* Based on Horizon's

experience and assuming typical timelines, it will be approximately July 2025 before the tower would be constructed at the site. *Id.* That is not "imminent" much less irreparable harm. Nor is it grounds for staying the case because that same time-consuming process would not start until after final resolution, further harming Horizon and its wireless carrier-customers.

The lack of imminent irreparable harm, alone, justifies denial of the Motion.

## B. Horizon Will Be Irreparably Harmed by Grant Of The Stay.

In contrast to the lack of imminent, actual, irreparable harm to the County, grant of the stay would immediately irreparably harm Horizon. Horizon's *only* recourse for violations of Section 332 is expedited relief, it cannot recover monetary harm. *See* 47 U.S.C. § 332(c)(7)(B)(v); *Rancho Palos Verdes,* 544 U.S. at 120-23. The statutory scheme emphasizes the need for prompt deployment of wireless services and facilities. Section 332(c)(7)(B)(ii) requires local governments to act "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). Rules implementing this provision require local governments to act within 150 days on an application to install a tower. 47 C.F.R. § 1.6003(c)(iv). Section 332(c)(7)(B)(v) of the statute requires any action challenging a denial under Section 332 to be filed within 30 days, and the Court must hear and decide the challenge on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

Granting the County an indefinite stay in a case *where the original application was submitted by Horizon on October 17, 2022*, (Compl. ¶ 25 ("Dkt. 4-2")), will conflict with the statutory directives and deprive Horizon of the only recourse available. Horizon has no recourse for the lost revenues or the costs of the litigation. *Rancho Palos Verdes,* 544 U.S. at 120-23. The County fails to address these harms, much less provide any evidence demonstrating that Horizon "will suffer no harm by temporary delay in construction of the tower" and that "a stay will be a benefit." (Motion at 13-14.) Instead, granting the County's stay will result in further delay, burdens, and lost revenues for Horizon.

## C.     The County is Not Likely to Succeed on the Merits.

To justify a stay, likelihood of success on the merits requires "more than a possibility of relief" or chances that are "better than negligible." *Nken,* 556 U.S. at 434. The County must make a strong showing that it is likely to succeed on the merits of its claim. *See Dine Citizens Against Ruining Our Env't v. Jewell,* 839 F.3d 1276, 1282 (10th Cir. 2016). The County cannot and does not meet that standard.

### 1. The District Court's Evaluation Of *Loper Bright*, the Hobbs Act, and the *FCC 2018 Order* Was Not Dispositive.

The County focuses the bulk of its argument on the District Court's evaluation of the *FCC 2018 Order* under the Hobbs Act and *Loper Bright v. Raimondo*, 144 S. Ct. 2244 (2024). That focus is misplaced and the arguments erroneous because these issues were not dispositive to the District Court's holding.

Although the District Court did correctly conclude that it lacks jurisdiction to hold the FCC's order erroneous under the Hobbs Act, 28 U.S.C. § 2342(1), the District Court ultimately based its holding that the County violated the effective prohibition clause of Section 332(c)(7)(B)(i)(II) using the Tenth Circuit's standard under *Corrales*. (Order at 19-20.) Specifically, because it was concerned about uncertainty in the law, the District Court explained it would apply both the new FCC standard **and** the Tenth Circuit's established standard. (Order at 19.) The District Court then concluded that "[Horizon] prevail[s] ***when applying the Tenth Circuit's 'least intrusive means' test to the facts of this case***." (*Id.* at 20 (emphasis added).) Thus, whether the District Court was correct in its discussion of the Hobbs Act or *Loper Bright* is not grounds for success on appeal because the District Court's holding rests on the Tenth Circuit's established standard.

Although the Court need not reach them, the County's arguments are substantively erroneous for the reasons the District Court articulated in its Order, (*Id.* at 19-24), and simply rehashing arguments already rejected by the District Court is not grounds for a stay. *See, e.g., Up State Tower*, 2020 WL 1909981 at \*3. As the District Court recognized, *Loper Bright* is not relevant in this case because neither Horizon's nor the County's motions for summary judgment raised *Chevron,* and Horizon did not request *Chevron* deference. (Order at 15.) *Chevron* deference was applicable, if at all, during the appeal of the *FCC 2018 Order* in *City of Portland v.*

14

*United States*, 969 F.3d 1020 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 2855 (2021). Once the Ninth Circuit ruled, however, the issue of deference was not properly before the District Court.

Although not dispositive, the District Court also correctly concluded the Hobbs Act deprives the District Court of jurisdiction to review the merits of the FCC's Order. (Order at 16.) The Hobbs Act provides in pertinent part, "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit) has ***exclusive jurisdiction*** to enjoin, set aside, suspend (in whole or in part), or to determine the validity of— (1) all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1) (emphasis added). The Tenth Circuit has recognized that the Hobbs Act "precludes collateral attacks on FCC Orders by prescribing the sole conditions under which the courts of appeals have jurisdiction to review the merits of FCC orders." *WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1273 n.8 (10th Cir. 2007) (internal quotations removed); *see also, e.g., Chavez v. Advantage Grp.,* 959 F. Supp. 2d 1279, 1281 (D. Colo. 2013). Thus, the District Court was correct that it lacks authority to review the validity of the *FCC 2018 Order.*[5]

---

[5] The County's assertion that *Loper Bright* "works together" with *PDR Network, LLC v. Carlton Harris Chiropractic, Inc.*, 588 U.S. 1, 7-8 (2019), to mean that the Hobbs Act does not apply to the *FCC 2018 Order* is mistaken. (Motion at 9.) In *PDR Network*, the majority explicitly declined to reach the conclusion the County

The County's suggestion that the Tenth Circuit should now reject the Ninth Circuit's decision affirming the FCC is also improper.  (Order at 10).  The appeal decided by the Ninth Circuit in *City of Portland* was originally assigned to the Tenth Circuit pursuant to a judicial lottery under 28 U.S.C. § 2112(a)(1)-(3) and then transferred to the Ninth Circuit under 28 U.S.C. § 2112(a)(5).  *See Sprint Corp. v. FCC*, No. 18-9563, Order (10th Cir. Jan 10, 2019) (A copy of the Tenth Circuit's Order summarizing the procedural background leading to transfer to the Ninth Circuit is attached hereto as Exhibit C.)  The Hobbs Act establishes a uniform procedure and venue for challenges to FCC orders "to eliminate the duplication of effort that resulted under prior law when appeals from agency orders were tried de novo in the district courts."  *Action for Children's Television v. FCC*, 546 F. Supp. 872, 874 (D.D.C. 1982) (citing  H. Rep. No. 2122 at 3-4 (1950)).  The County's suggestion that the Tenth Circuit now re-litigate the appeal that it transferred to the Ninth Circuit would nullify the statutory scheme governing such appeals.

Although correct, the District Court's analysis of the Hobbs Act and *Loper Bright* need not be reached because the District Court held that the County violated Section 332(c)(7)(B)(i)(II) under the Tenth Circuit's standard.  The County cannot succeed on appeal based this issue alone.

---

ascribes to the case, emphasizing that it was not reaching the question of whether the FCC order bound the district court.  *Id.*

## 2. The County Is Not Likely To Succeed On The Effective Prohibition Claim.

The County is not likely to succeed on Horizon's "effective prohibition" claim because the District Court correctly applied the Tenth Circuit's standard. Under the Tenth Circuit's test, local government's denial creates an effective prohibition when (1) there is a significant gap in wireless services and (2) the proposed facility is the least intrusive means of remedying the gap. *Corrales,* 642 F. App'x at 889 (following *MetroPCS, Inc. v. City & Cty. of San Francisco,* 400 F.3d 715, 734 (9th Cir. 2005)); Order at 20. Whether the proposed tower is the "least intrusive means" asks whether the applicant engage in a good faith investigation of potential alternative locations and designs. (Order at 21-22; *Corrales*, 642 F.App'x at 890-91.) To contradict an applicant's showing, the local government must demonstrate that there is some technologically viable, non-speculative less intrusive alternative that the applicant did not consider. *See, e.g., Corrales*, 642 F.App'x at 892 (noting city's failure to identify less intrusive alternatives); *T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 996 (9th Cir. 2009) (burden shifts to city).

Applying those standards, the District Court found the existence of a significant gap established by both parties' expert witnesses. (Order at 21.) The District Court also found unrefuted evidence demonstrating the good faith investigation of potential alternative properties and locations for the proposed tower, within technological and practical confines. (Order at 3-4, 21-22.) Critically, the

District Court recognized that the County does not contend that there is an alternative location or design in Wapiti Valley that Horizon should have investigated but failed to investigate. (Order at 22; Dkt. 4-5 ¶ 129; Dep. of Joy Hill at 71:18-22 (attached hereto as Exhibit D).)

The County's argument now focuses on its legally and factually unsupported assertion that Horizon's objective was to extend wireless coverage "as far as east and west coverage is possible." (Motion at 10-11.) Factually, the County is mischaracterizing the evidence regarding the radio frequency objective of the proposed tower. The County cherry-picks a portion of a sentence from the deposition of Horizon's radio frequency expert, but in doing so, ignores the expert's full statement and his repeated testimony emphasizing that the primary objective was not simply to reach as far as possible, but to serve the population area in Wapiti Valley and also east and west along Highway 20. *See, e.g.*, Dep. of Steven Kennedy at 56:15-18, 59:4-11, 71:5-11, 74:5-8, 82:1-4, 94:9-23 (excerpts attached hereto as Exhibit E). Mr. Kennedy also testified at the February County hearing that it was critical to locate the tower to cover the residential areas. (Tr. of February Hearing at 15:23-16:5 (excerpts attached hereto as Exhibit F.)

The County also ignores the expert's opinion that a 250-foot-tall tower was what he believed necessary to achieve the coverage objective. (Exh. E at 55:3-11; Exh. F at 26:22-27:9; *see also* Order at 24.) The proposed tower height of 195 feet

is less than required to fully achieve that objective in his opinion. (Kennedy Dep. at 52:7-23; 53:19-24; 54:6-8; 55:1-2.) The District Court correctly rejected the County's current argument, holding that Horizon's proposal to install a 195-foot tower, rather than a 250-foot tower, actually further supports the conclusion that the proposed tower is the least intrusive means of remedying the gap. (Order at 24.)

The County's argument is also contradicted by the testimony from the County's representative that the County does *not* contend that a lower tower would be less intrusive. (Hill Dep. at 97:1-17). The County's current focus on the alleged coverage objective is irrelevant because even a shorter tower would not be less intrusive, according to the County.

Ultimately, the County cites no case holding that if a proposed tower's objective is maximum coverage (which is not accurate in this case), it cannot be the least intrusive means of remedying a significant gap. Indeed, a single tower that provides maximum coverage may be less intrusive than multiple towers achieving the same coverage.

### 3. The County Is Not Likely To Succeed On The Substantial Evidence Claim.

The County also is not likely to succeed on the Court's holding that the denial violated 47 U.S.C. § 332(c)(7)(B)(iii). As the District Court explained, the County must issue "a decision along with a supporting record sufficient to allow a reviewing court to identify the reason or reasons why the locality denied the application. If the

record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasons for rejecting or discrediting competent evidence." (Order at 25; *see also id.* at 26.) The Court correctly found that "the Board's decision fails to explain its reasoning to any level that would allow this court to identify its considerations." (Order at 28.)[6]

The County's Motion fails to identify any error in the District Court's reasoning to satisfy the heavy burden of likelihood of success. Instead, the County advances a plea based on opposition by large landowners. But the County's allegation that 65% of the "land ownership" opposes the tower is unavailing because Section 332's "substantial evidence" standard does not depend on the mere volume of the opposition or the size of their land holdings. Generalized opposition to wireless is not substantial evidence, *see, e.g., U.S. Cellular Corp. v. Bd. of Adjustment of the City of Seminole,* 180 Fed. Appx. 791, 794 (10th Cir. 2006); *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield,* 691 F.3d 794, 799 (6th Cir. 2012), and the District

---

[6] The County mischaracterizes "substantial evidence" review. Substantial evidence review is not simply a rubber stamp of local government findings. *Wyandotte Cnty.*, 546 F.3d at 1306-07. Rather, courts must review local decisions to ensure that the reasons for those rulings are adequately supported and explained. *Id.* at 1307. Accordingly, the "scope" of such review under Section 332 is whether the County's *reasons* for denial are supported by substantial evidence in the record. Nothing about the correct standard is "too narrow" for a District Court to review or overturn, as the County argues. (Motion at 3-4.)

Court correctly held that the County's denial failed to explain why it accepted certain anti-tower comments over evidence supporting the tower.  (Order at 29).

The Court also correctly held that the County's denial misstated and misapplied the County's own zoning regulations, "substantially lower[ing] the threshold for an adverse finding against the proposed project."  (Order at 30.)  The County's Motion does not address this finding or offer anything showing the County is likely to succeed on this issue on appeal.

**D.**     **The Public Interest Favors Denying the County's Request.**

The public interest will not be served by granting the County's Motion.  Courts have long recognized a significant public policy interest in wireless communications infrastructure deployment.  *See, e.g., Rancho Palos Verdes*, 544 U.S. at 115; *Wyandotte Cnty.*, 546 F.3d at 1306; *Up State Tower*, 2020 WL 1909981 at *4 (denying stay pending appeal because it would delay the deployment of a tower needed to remedy a coverage gap).

The County argues that area residents have chosen to live in and travel through areas that lack wireless communications services and prefer this lifestyle.  (Motion at 14.)  Even if it is true that 65% of the "land ownership" opposed construction of the tower, those landowners cannot be allowed to deny the rest of the community and those traveling through the area modern communications technology and services.  Likewise, large property owners cannot force travelers to suffer harm (*e.g.,* in the

event of traffic incidents) due to their supposed preference to live in an area without modern technologies. Congress passed Section 332(c)(7)(B) to facilitate the development of a national wireless communications system unhampered by a "conflicting patchwork" of local regulations. *Rancho Palos Verdes*, 544 U.S. at 127-28 (Breyer, J., concurring) (quoting H. R. Rep. No. 104-204, pt. 1, p. 94 (1995)); *see also, e.g., Intermax Towers, LLC v. Ada Cnty.,* 2024 WL 129033 (D. Idaho Jan. 11, 2024) (citing *id.*). The type of generalized opposition the County relies on, creating an effective prohibition of service, is precisely why Congress preempted the issue.

## VI.  CONCLUSION

Based on the foregoing, the Court should deny the Motion.


DATED:  October 15, 2024.          Respectfully Submitted,

                                   */s/ T. Scott Thompson*
                                   Thomas Scott Thompson
                                   Jonathan P. Garvin
                                   Mintz, Levin, Cohn, Ferris, Glovsky and
                                   Popeo, P.C.
                                   555 12th Street NW, Suite 100
                                   Washington, DC 20004
                                   Telephone: (202) 434-7440
                                   SThompson@mintz.com
                                   JPGarvin@mintz.com

                                   ATTORNEYS FOR PLAINTIFFS
                                   HORIZON TOWER LIMITED, LLC
                                   and HORIZON TOWER, LLC.

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[**X**] this document contains **5,150** words, or

[ ] this brief uses a monospaced typeface and contains <state the number of> lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2402 in Times New Roman 14 Point Font, or

[ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

October 15, 2024.

*/s/ T. Scott Thompson*
Thomas Scott Thompson
Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
555 12th Street NW, Suite 100
Washington, DC 20004
Telephone: (202) 434-7440

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October 2024, a copy of the foregoing was electronically filed and served via the CM/ECF system upon counsel of record:

BRYAN A. SKORIC, Park County Attorney
DUSTIN N. SLADE, Deputy Park County Attorney
1002 Sheridan Avenue
Cody, Wyoming, 82414

*/s/ T. Scott Thompson*
T. Scott Thompson

# STATUTORY APPENDIX

## 47 U.S.C. § 332

**(c)** **Regulatory treatment of mobile services.**

    **(7)** Preservation of local zoning authority.

        **(A)** General authority. Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

        **(B)** Limitations.

            **(i)** The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

                **(I)** shall not unreasonably discriminate among providers of functionally equivalent services; and

                **(II)** shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

            **(ii)** A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

            **(iii)** Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

            **(iv)** No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

            **(v)** Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

        **(C)** Definitions. For purposes of this paragraph—

**(i)** the term "personal wireless services" means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services;

**(ii)** the term "personal wireless service facilities" means facilities for the provision of personal wireless services; and

**(iii)** the term "unlicensed wireless service" means the offering of telecommunications services using duly authorized devices which do not require individual licenses, but does not mean the provision of direct-to-home satellite services (as defined in section 303(v) [*47 USCS § 303(v)*]).

**(8)** Mobile services access. A person engaged in the provision of commercial mobile services, insofar as such person is so engaged, shall not be required to provide equal access to common carriers for the provision of telephone toll services. If the Commission determines that subscribers to such services are denied access to the provider of telephone toll services of the subscribers' choice, and that such denial is contrary to the public interest, convenience, and necessity, then the Commission shall prescribe regulations to afford subscribers unblocked access to the provider of telephone toll services of the subscribers' choice through the use of a carrier identification code assigned to such provider or other mechanism. The requirements for unblocking shall not apply to mobile satellite services unless the Commission finds it to be in the public interest to apply such requirements to such services.

**(d) Definitions.** For purposes of this section—

**(1)** the term "commercial mobile service" means any mobile service (as defined in section 3 [*47 USCS § 153*]) that is provided for profit and makes interconnected service available (A) to the public or (B) to such classes of eligible users as to be effectively available to a substantial portion of the public, as specified by regulation by the Commission;

**(2)** the term "interconnected service" means service that is interconnected with the public switched network (as such terms are defined by regulation by the Commission) or service for which a request for interconnection is pending pursuant to subsection (c)(1)(B); and

**(3)** the term "private mobile service" means any mobile service (as defined in section 3 [*47 USCS § 153*]) that is not a commercial mobile service or the functional equivalent of a commercial mobile service, as specified by regulation by the Commission.